UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LAVERNE A. LYNCH | CASE NO. 1:20-CV-1728-BYP |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| v. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

## INTRODUCTION

Plaintiff Laverne A. Lynch filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF #1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On May 21, 2021, this matter was reassigned to me pursuant to General Order 2021-06 (non-document entry dated May 21, 2021). Following review, and for the reasons stated below, I recommend the Court **REVERSE** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Lynch initially filed for DIB on September 12, 2017 and protectively filed for SSI on December 30, 2017, alleging a disability onset date of January 4, 2017. (Tr. 282, 283). Both claims were denied initially on April 4, 2018, and upon reconsideration on March 8, 2011. (*Id.*). On July 26, 2019, an administrative law judge issued a decision finding Ms. Lynch not disabled. (Tr. 207-

17). On June 5, 2020, the Appeals Council denied Ms. Lynch's request for review, thereby making the ALJ's denial of benefits the Commissioner's final decision. (Tr. 1-4). Ms. Lynch then filed a complaint in this Court challenging the final decision of the Commissioner. (ECF #1).

FACTUAL BACKGROUND

## I.  ADMINISTRATIVE HEARING

Ms. Lynch appeared at the hearing on June 25, 2019 with counsel. (Tr. 207). Also present at the hearing was Kathleen L. Reis, a Vocational Expert. (*Id.*). The following summarizes the testimony presented during the hearing before the ALJ.

Ms. Lynch explained she stopped working in January 2017 after she was hospitalized and diagnosed with bilateral pulmonary emboli. (Tr. 240). Subsequently, Ms. Lynch underwent surgery in October 2017 to remove a mass in her abdomen. (Tr. 241). She did not fully recover from that surgery. (*Id.*). Ms. Lynch experiences abdominal pain after ingesting solid foods and liquids. (*Id.*). She testified to frequent, protracted bowel movements that keep her in the bathroom for no less than thirty-five minutes at a time, more than six times per day on average. (*Id.*). Sometimes, the need to go to the bathroom comes on suddenly. (Tr. 242). At other times, when she has constipation, she will try to pass a bowel movement but is unable to do so. (*Id.*). Ms. Lynch explained that she no longer attends church services because she needs to be in close proximity to an available restroom. (Tr. 250).

Ms. Lynch also explained that she has pain in her left upper and lower extremities and pain in her upper and lower back. (Tr. 242, 243). Both of her legs swell and ache, requiring that she change positions, elevate her legs, or recline most of the day to alleviate the pain. (Tr. 243). Ms. Lynch elevates her legs whenever she sits down. (*Id.*). Compression stockings help but her legs

2

swell whether she is sitting or standing. (Tr. 244). She can stand for approximately fifteen minutes at a time. (Tr. 250). Ms. Lynch testified that the pain interferes with her ability to sleep and she is very fatigued most days. (Tr. 245). This interferes with her ability to focus. (*Id.*).

Ms. Lynch testified to constant tingling and numbness on her left side. (*Id.*). She has weakness and decreased sensation in her left arm resulting in a decreased ability to grip and hold with her left hand. (Tr. 246). She is unable to lift any weight with her left arm and estimates she can lift up to four pounds with her right arm. (Tr. 248). Lifting more weight increases pain to her arms, core, and back. (*Id.*).

Ms. Lynch's asthma, a long-standing problem, worsened after January 2017. (Tr. 246). She now uses a nebulizer for breathing treatments every four hours. (*Id.*). She often takes prednisone to resolve asthma-related problems, which prevents her from sleeping at all. (Tr. 247). Cooler temperatures and drafts trigger asthma attacks. (*Id.*).

Ms. Lynch testified to recurring blurred vision not alleviated by her prescription lenses. (Tr. 249).

Ms. Lynch lived alone before January 2017 but now lives with a friend who does all the cooking and household chores. (Tr. 249). Ms. Lynch manages her personal hygiene, but the process takes a long time. (Tr. 250).

The VE then testified. The ALJ proposed a hypothetical individual (with a capacity for light work but limited to four hours of standing and walking in an eight-hour workday, six hours of sitting in an eight-hour workday, with the ability to frequently push and pull with the left upper extremity, frequently climb stairs and ramps, frequently balance, occasionally stoop, kneel, crouch and crawl, but never climb ladders, ropes, or scaffolds, but should avoid exposure to fumes, odors,

dust, gases, poor ventilation, and hazards such as industrial machinery and unprotected heights)

and inquired of the VE whether such an individual could perform Ms. Lynch's past work. The VE

testified that such limitations precluded all past work, but that the skills gained in the past work

exactly transfer to a correspondence school instructor position: a sedentary, skilled position that

could be performed in any setting. (Tr. 253, 254). But the position would be ruled out if the

hypothetical individual was limited to occasionally performing tasks that require near visual acuity.

(Tr. 254). The VE testified an employer typically tolerates an employee who is off task up to fifteen

percent of the workday. (Tr. 255). An additional two or three unscheduled breaks lasting fifteen to

twenty minutes each "could be a problem for an employer who considers these breaks a breach of

a policy prohibiting unscheduled breaks." (*Id.*).

## II.   PERSONAL AND VOCATIONAL EVIDENCE

Ms. Lynch was 51 years old when she filed her initial applications and was 53 years old at

the time of the administrative hearing. (Tr. 258). Ms. Lynch was previously employed as an

Elementary School Teacher, a Job Developer, and an Adjunct Professor; this work was "substantial

gainful activity" under the Act, was performed long enough for Ms. Lynch to achieve average

performance, and was performed within the relevant period. (Tr. 215; *see also* 20 C.F.R.

§§ 404.1565 and 416.965). The VE testified that, given her residual functional capacity, Ms.

Lynch could no longer perform past relevant work. (Tr. 253).

## III.   RELEVANT MEDICAL EVIDENCE

In January 2017, Ms. Lynch was admitted to the hospital for chest pain, right leg pain, and

dyspnea. (Tr. 572). Imaging tests revealed bilateral pulmonary emboli, which was treated with a

warfarin anticoagulation regimen, and later with Lovenox. (Tr. 580, 628, 1026). An ultrasound of

her right leg showed a thrombus in the small saphenous vein. (Tr. 518). On February 16, 2017,

Ms. Lynch's chest CT showed near complete resolution of the bilateral pulmonary emboli. (Tr.

657). After the diagnosis, she continued to complain of chest pain, located in the trunk at the base

of the chest, shortness of breath on minimal exertion, intermittent nausea, and fatigue. (Tr. 653,

660, 669, 679, 684, 703, 713, 740, 764, 770, 790, 795, 811, 820, 827, 912, 934, 1026, 1069). In

May 2017, Ms. Lynch underwent a stress test, the results of which suggested stress-induced

ischemia. (Tr. 785). In June 2017, a thoracic x-ray showed abnormal curvature, determined to be

minimal scoliosis. (Tr. 825).

In March 2017, a CT scan of Ms. Lynch's abdomen and pelvis revealed persistent epiploic

appendagitis and a jejunal polyp. (Tr. 730). The polyp, not obviously related to Ms. Lynch's

epigastric pain, was surgically removed on October 16, 2017 and determined to be benign. (Tr.

947, 1083, 1187). Post-surgery, Ms. Lynch continued to complain of epigastric pain, nausea, core

discomfort, and constipation. (Tr. 1069, 1076, 1572, 1573-74, 1606, 1649, 1652, 1664, 1671,

1675, 1689).

In September 2017, Ms. Lynch was diagnosed with chronic venous insufficiency with

complication involving both sides. (Tr. 1109-1110). Physical examination revealed varicose veins

and tenderness in her ankles, left more than right. (Tr. 1122).

After her abdominal surgery in October 2017, Ms. Lynch began experiencing numbness,

tingling, and weakness on the left side of her body and began dropping things from her left hand.

(Tr. 1062, 1078). On December 16, 2017, Ms. Lynch met with Dr. Adrienne Boissy at the Mellen

Center for Multiple Sclerosis for a consultation. On physical examination, Dr. Boissy found Ms.

Lynch exhibited normal strength in the right upper and lower extremity and diminished strength

in the left upper and lower extremity. (Tr. 1064). Dr. Boissy noted a difference in effort when she examined Ms. Lynch's left upper extremity, possibly secondary to pain rather than physiological weakness. (Tr. 1064). Ms. Lynch displayed normal reflexes but decreased sensation to light touch on the left upper and lower extremity. (Tr. 1064). Dr. Boissy ordered a brain and cervical spine MRI and physical and occupational therapy. (Tr. 1065). The brain and cervical scan showed "multiple intracranial white matter lesions which are indeterminate but can be seen in the context of multiple sclerosis." (Tr. 1611).

In February 2018, Ms. Lynch began physical and occupational therapy. At the initial physical therapy evaluation, Ms. Lynch presented with left-sided hemiparesis[1] and left-sided paresthesia[2] in her left upper and lower extremities. (Tr. 1564). She exhibited an absence of proprioception[3] on the left side and weakness in the left upper and lower extremities. (Tr. 1567). Ms. Lynch displayed a toe drag gait pattern but ambulated independently, albeit with difficulty. (Tr. 1564, 1568). At the occupational therapy evaluation, Ms. Lynch displayed a weaker left-hand grip strength and diminished muscle strength on the left. (Tr. 1563). She also took the nine-hole peg test, an assessment of fine manual dexterity for evaluation of multiple sclerosis. 2 Attorneys

---

[1]     Weakness affecting one side of the body. *Hemiparesis*. American Stroke Association https://www.stroke.org/en/about-stroke/effects-of-stroke/physical-effects-of-stroke/physical-impact/hemiparesis (last visited September 15, 2021).

[2]     Burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. *Paresthesia*. National Institute of Neurological Disorders and Stroke. https://www.ninds.nih.gov/Disorders/All-Disorders/Paresthesia-Information-Page (last visited September 15, 2021).

[3]     The body's sense of its own posture, location, balance and general relationship to the external world; it includes awareness of the state of muscular contraction. *Terminology*, 8 Attorneys Medical Advisor, § 73:3.

Medical Deskbook § 18:12. She required significantly more time to complete the assessment with her left hand. (Tr. 1564).

She attended therapy appointments for five months with some progress, but she continued to display left-sided upper extremity weakness, diminished fine motor coordination and manual dexterity, and decreased range of motion. (Tr. 1607, 1632, 1633, 1629, 1630, 1647, 1652, 1653, 1654, 1656, 1657, 1658, 1659, 1661-62, 1673, 1674, 1679, 1680, 1682, 1683, 1684, 1688, 1697, 1698, 1699, 2438, 2440, 2441, 2442, 2444, 2446, 2447, 2449).

Ms. Lynch has a longstanding history of asthma. Her medical records reveal that she underwent Pulmonary Function Testing (PFT) in November 2008. (Tr. 926). Results were compatible with hyperactive airway disease, induced by cold air. (*Id.*). At the time of Ms. Lynch's alleged disability onset date, her asthma was controlled with a levalbuterol inhaler (one puff every six hours as needed), a beclomethasone inhaler (two puffs two times daily), and a nebulization solution (three times daily as needed for wheezing). (Tr. 564).

## IV. MEDICAL OPINIONS

The administrative record does not contain medical source opinions from Ms. Lynch's medical providers. State Agency medical consultants reviewed the medical evidence at the initial and reconsideration levels of the administrative review process. (Tr. 263-322). At the initial level, the consultant reviewed Ms. Lynch's medical records and completed a Physical Residual Functional Capacity Assessment. (Tr. 277-79). The consultant rated Ms. Lynch's exertional, postural, and environmental limitations as follows:

> occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk with normal breaks for a total of four hours, sit with normal breaks for a total of six hours in an 8-hour workday, and frequently push and/or pull with the left upper extremity; frequently climb ramps/stairs and balance, occasionally

stoop, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds, and avoid exposure to fumes, odors, dusts, gases, poor ventilation and hazards such as machinery and unprotected heights.

(*Id.*).

On reconsideration, after review of additional medical evidence, a second consultant adopted the same exertional, postural, and environmental limitations. (Tr. 293-95).

## THE ALJ'S DECISION

The ALJ's decision, dated July 26, 2019, included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.

2. The claimant has not engaged in substantial gainful activity since January 4, 2017, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, venous thromboembolism, pulmonary embolism, postural orthostatic tachycardia syndrome, gastroparesis, asthma and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920 (d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can sit for six hours in an eight-hour workday; and stand and walk for four hours in an eight-hour workday. In addition, the claimant can frequently push and pull with the left upper extremity. The claimant can frequently climb ramps and stairs; frequently balance; occasionally stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. The claimant should avoid exposure to fumes, odors, dusts, gases and poor ventilation; and avoid exposure to hazards as industrial machinery and unprotected heights.

8

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on September 15, 1965 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a, 404.1568(d), 416.969, 416.969a, and 416.968(d)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 4, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 209-17).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006), *citing* 42 U.S.C. § 405(g). In determining whether the Commissioner's

findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986), *citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

DISCUSSION

Ms. Lynch argues the ALJ did not properly analyze Ms. Lynch's subjective complaints in accordance with Social Security Ruling 16-3p, and substantial evidence does not support the ALJ's assessment of Ms. Lynch's residual functional capacity. I discuss these issues in turn.

## I.  EVALUATION OF SYMPTOMS, INCLUDING PAIN

Ms. Lynch argues first that the ALJ did not properly analyze Ms. Lynch's subjective complaints of pain. SSR 16-3p describes the two-step process by which a claimant's symptoms are evaluated. First, the Commissioner determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms, such as pain. SSR 16-3p; *see also* 20 C.F.R. §§ 404.1529(a) and 416.929(a). At step two, the Commissioner evaluates the intensity and persistence of an individual's symptoms and determines the extent to which the individual's symptoms limit her ability to perform work-related activities. SSR 16-3p; *see also* 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1).

The Commissioner considers, *inter alia,* objective medical evidence, guided by the following:

> Objective medical evidence is obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [an individual's] symptoms and the effect those symptoms, such as pain, may have on your ability to work.

20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2).

The Commissioner may not disregard an individual's statements solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged. SSR 16-3P; *see also* 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2). The Commissioner will not, however, find an individual to be disabled based on alleged symptoms alone. *Id.*

Absent objective medical evidence sufficient to find disability, an individual's statements of the intensity, persistence, and limiting effects of the claimant's symptoms will be considered with other relevant evidence. *Baumhower v. Comm'r of Soc. Sec.,* No. 3:18 CV 0098, 2019 WL 1282105, at *1 (N.D. Ohio Mar. 20, 2019), *citing* SSR 16-3p. The Commissioner considers information from medical and non-medical sources because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). The regulations set forth factors the ALJ should consider in assessing an individual's subjective complaints. These include the individual's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or other measures used to relieve pain. *Id.*

The ALJ's evaluation of subjective evidence receives broad deference from the reviewing court. *Baumhower,* 2019 WL 1282105, at *2. A reviewing court may not disturb the ALJ's analysis of an individual's subjective complaints, and the conclusions drawn from it, absent compelling reason. *Id.* (cleaned up). The Sixth Circuit does not require the ALJ to discuss each factor relevant to the intensity, persistence, and limiting effects of an individual's subjective complaints so long as substantial evidence supports the analysis. *Bowman v. Chater,* No. 96-3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997), *citing Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

13

Here, the ALJ's inaccurate characterization of the objective medical evidence—diminished muscle strength and fine motor control, instances of diminished reflexes, sensory deficits proven through tissue biopsy, venous insufficiency with varicose veins, and gait disturbances—as "relatively normal" (Tr. 212) and failure to adequately consider any of the information contained in the physical and occupational therapy treatment notes led the ALJ to conclude:

> [Ms. Lynch's] statements about the intensity, persistence and limiting effects of her symptoms are inconsistent with the evidence of record, showing relatively normal objective findings and no longitudinal course of treatment. While the evidence of record shows some instances of weakness in her left upper extremity and pain in her lower extremities, the record contains no notable findings to support the extent of limitations alleged or preclude work at the light exertional level.

(*Id.*).

If the medical records in fact supported benign findings, the ALJ's analysis of Ms. Lynch's subjective complaints and residual functional capacity could be appropriate and consistent with the regulations. But in my view, that is not the case. Taken as a whole, the record compels the conclusion that he ALJ improperly characterized abnormal objective medical evidence as normal, failed to acknowledge medical conditions with which Ms. Lynch was diagnosed, and ignored evidence relevant to Ms. Lynch's functional limitations and subjective complaints of pain. These errors require that the Court reverse the ALJ's decision.

## II.    SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE RFC ASSESSMENT

Ms. Lynch also complains that the ALJ's decision that Ms. Lynch can perform light work is not supported by substantial evidence because the ALJ did not properly consider Ms. Lynch's subjective complaints and the factors set forth in Social Security Ruling 16-3p (SSR 16-3p). (Pl's. Br., ECF #13, PageID 2867). Ms. Lynch argues the ALJ was selective in analyzing the record and

failed to include evidence of objective findings—such as gait disturbances, decreased thoracic range of motion, and weakness and diminished sensation in the left upper and lower extremities—that support Ms. Lynch's allegations. According to Ms. Lynch, this error, combined with the ALJ's failure to consider the relevant factors in 20 C.F.R. § 404.1529(c)(3), precludes meaningful review of the ALJ's decision. (*Id.* at PageID 2868-69, 2872).

The Commissioner responds that the ALJ identified and explained the evidence supporting her RFC, and properly analyzed Ms. Lynch's subjective complaints. (Comm'rs Br., ECF #17, PageID 2902-03). Upon a review of the entire record, I conclude the ALJ's residual functional capacity assessment is not supported by substantial evidence because the ALJ mischaracterized the objective medical evidence and did not adequately address, mention, or refute contradictory evidence.

An individual's residual functional capacity – that is, the most an individual can still do despite applicable limitations – is a decision reserved for the ALJ. 20 C.F.R. § 1546(c). The ALJ assesses an individual's residual functional capacity based on all relevant evidence of record. 20 C.F.R. § 404.1545(a)(1). It is well established that an ALJ is not required to discuss every piece of evidence in the record. *See, e.g., Conner v. Comm'r of Soc. Sec.*, No. 16–5175, 2016 WL 4150919, at *6 (6th Cir. Aug. 5, 2016), *citing Thacker v. Comm'r*, 99 Fed. Appx. 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record). But, where an ALJ selectively considers only those portions of the medical evidence that place a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability, courts do not hesitate to remand. *See, e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper

analysis); *see also Ackles v. Colvin*, No. 3:14CV00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17,

2015) ("The ALJ did not mention this objective evidence and erred by selectively including only

the portions of the medical evidence that placed Plaintiff in a capable light."); *Johnson v. Comm'r of*

*Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has

not hesitated to remand cases where the ALJ engaged in a very selective review of the record and

significantly mischaracterized the treatment notes.").

As to medical evidence related to Ms. Lynch's back and extremity pain, the ALJ noted the

relatively normal clinical examination findings, including normal gait, no "strength, range of

motion, or other focal motor deficits," and that "neurological examination findings were relatively

normal and [Ms. Lynch's] sensation was grossly intact, as well as no sensory deficits were observed

in her upper and lower extremities." (Tr. 212). A review of the records the ALJ cites in support

reveals a significant disconnect between the examination findings and the ALJ's characterization of

those findings. For instance, the ALJ cites to a pain consultation record where physical

examination revealed normal strength in the right upper and lower extremities but decreased

strength in the left upper and lower extremities, diminished deep tendon reflexes, a gait showing

decreased swing on the left, and positive facet loading in Ms. Lynch's mid- to low thoracic spine.

(Tr. 2527, 2530). The ALJ also cites to a neurology consultation record, where examination

findings revealed normal strength in the right upper and lower extremities but decreased strength

in the left upper and lower extremities. (Tr. 2551). Sensory examination revealed diminished

sensation on the left side to light touch, vibration, and proprioception. (*Id.*). The ALJ cites to a

follow-up pain management appointment, where examination revealed positive facet loading in the

mid thoracic spine, tenderness over Ms. Lynch's mid thoracic paraspinal muscles, tenderness of

the lumbar paraspinal and flank muscles, diminished deep tendon reflexes, diminished strength in

the left upper and lower extremity, and a gait favoring the right leg for guarding of the left. (Tr.

2565). In yet another record cited by the ALJ, Ms. Lynch displayed diminished reflexes on the left

side, a wide-based ataxic gait,[4] decreased sensation in the left leg, and decreased strength in the left

upper and lower extremity. (Tr. 2608).

      More concerning, however, is the ALJ's failure to discuss or acknowledge pertinent

evidence. For instance, Ms. Lynch attended physical and occupational therapy appointments for

five months, during which she underwent functional assessments.[5] Over the course of Ms. Lynch's

treatment, she displayed left upper extremity weakness and easy fatiguability, decreased left-handed

grip strength, and difficulty with left-handed fine motor coordination and manual dexterity,

evidenced by functional testing. (Tr. 1629, 1652, 1653, 1654, 1657, 1659, 1661-62, 1673, 1679,

1683-84, 1697, 2181, 2449). In physical therapy, she experienced some improvement in her lower

extremity strength but displayed a slow gait speed with intermittent toe drag, easy fatiguability, and

balance issues. (Tr. 1674, 1680, 1682, 1684, 1688, 1699). The ALJ did not cite to any specific page

of the physical or occupational treatment records, nor did the ALJ overtly acknowledge the lengthy

course of treatment in her unfavorable decision.[6] These records are replete with functional

---

[4]    "An unsteady, staggering gait is described as an ataxic gait because walking is uncoordinated and appears to be 'not ordered.'" *What is Ataxia?*, John Hopkins Medicine, https://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/ataxia/conditions/ (last visited September 14, 2021).

[5]    I recognize the assessments contained in the physical and occupational therapy records are not "residual functional capacity" assessments; however, they offer evidence relevant to Ms. Lynch's functional abilities and limitations.

[6]    The ALJ cites generally to an exhibit containing 124 pages of medical records, some of which contain physical and occupational therapy treatment notes. The ALJ referenced the exhibit as evidence that Ms. Lynch did not pursue more invasive treatment for her symptoms or require surgical intervention. (*See* Tr. 212).

objective measures, including grip strength, muscle strength, walking and balancing tests, upper extremity fine motor control and manipulation tests. Additionally, these records contain statements from Ms. Lynch about the difficulty she experiences in attending to daily activities.

The ALJ also did not mention or address Ms. Lynch's biopsy-proven small fiber sensory neuropathy, noted to be severe (Tr. 2679), or chronic venous insufficiency with varicose veins (Tr. 1109-10). Small fiber sensory neuropathy is a condition characterized by unusual sensations such as pins-and-needles, pricks, tingling, numbness, burning pain, and electric shock-like sensations.[7] Chronic venous insufficiency occurs when valves in the leg veins do not work well, allowing blood, intended to flow back to the heart, to collect in the legs, often causing pain.[8]

While the ALJ need not discuss every piece of evidence in the record, here I can only conclude that the ALJ mischaracterized the records she did acknowledge, which has the effect of casting Ms. Lynch in a more capable light than may be wholly accurate. I also conclude the ALJ ignored evidence that, if accepted, could change the analysis of Ms. Lynch's residual functional capacity.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the Commissioner's decision denying DIB and SSI be **REVERSED.** On remand, I recommend that the Commissioner conduct a careful and thorough review of the record,

---

[7]    *Small Fiber Sensory Neuropathy*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/peripheral_nerve/conditions/small_fiber_sensory_neuropathy.html (Last visited September 15, 2021).
[8]    *What is Chronic Venous Insufficiency?*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/chronic-venous-insufficiency (Last visited September 15, 2021).

including any new and material evidence pertinent to Ms. Lynch's claims, analyze Ms. Lynch's

symptoms in accordance with SSR 16-3p and the regulations, and, if necessary, receive medical

expert testimony to determine how Ms. Lynch's various physical impairments affect her level of

functioning.

     Dated: September 20, 2021

                                                 _____
                                                 DARRELL A. CLAY
                                                 UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985)**.**